IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER JAMES,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | **8:25CV364**<br><br>**FINDINGS AND RECOMMENDATION** |

Plaintiff Jennifer James seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final administrative decision of Frank Bisignano, Commissioner of the Social Security Administration ("Commissioner"). Now pending before the Court is Plaintiff's Motion to Reverse and Remand, Filing No. 22, and the Commissioner's Motion to Affirm [his] Decision. Filing No. 24. Both motions were referred to the undersigned magistrate judge by the Honorable Robert F. Rossiter, Jr., Chief United States District Judge. For the reasons stated below, the undersigned finds and recommends the Court affirm the Commissioner's denial of benefits.

## PROCEDURAL HISTORY

On July 8, 2022, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income. Plaintiff alleged a disability onset date of September 1, 2018. Tr. 79; Filing No. 7-3 at 9; Tr. 89; Filing No. 7-3 at 19. These claims were initially denied on April 18, 2023, and upon reconsideration on November 13, 2023. Tr. 78; Filing No. 7-3 at 8; Tr. 99; Filing No. 7-3 at 29; Tr. 100; Filing No. 7-3 at 30; Tr. 112; Filing No. 7-3 at 42.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff and her counsel appeared for a telephonic hearing on April 2, 2024. Tr. 42; Filing No. 7-2 at 43. On April 22, 2024, the ALJ issued an opinion denying Plaintiff's applications. Tr. 8–36; Filing No. 7-2 at 9–37. In relevant part, the ALJ found at Step 2 that Plaintiff has

1

mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; and mild limitations in her ability to concentrate, persist, or maintain pace. Before considering Step 4, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift 20 pounds occasionally and 10 pounds frequently. She can sit six hours, stand six hours and walk six hours in an 8-hour workday. She can occasionally balance, stoop, kneel, crouch, crawl and climb. She can frequently handle and finger with her bilateral hands. She can frequently reach overhead bilaterally. She can perform work that does not involve concentrated exposure to cold, heat, wetness, humidity, pulmonary irritants or more than moderate noise.

Tr. 17; Filing No. 7-2 at 18. The RFC did not include any mental limitations. In determining the RFC, the ALJ also did not account for Plaintiff's contentions pertaining to frequent daily vomiting or cane use.

The ALJ ultimately concluded at Step 4 that Plaintiff is capable of performing her past relevant work as a server. Alternatively, the ALJ concluded at Step 5 that there are other jobs existing in significant numbers in the national economy Plaintiff can perform. Accordingly, the ALJ found Plaintiff not disabled from the alleged onset date (September 1, 2018) through the date of the decision (April 22, 2024). The Appeals Council denied Plaintiff's request to review the ALJ's decision on March 26, 2025, Tr. 1–7; Filing No. 7-2 at 2–8, and the ALJ's decision stands as the Commissioner's final decision. *See Kraus v. Saul*, 988 F.3d 1019, 1023 (8th Cir. 2021).

Plaintiff challenges the Commissioner's decision and presents the following issues for the Court's review:

1) Whether the Commissioner erred as a matter of law by failing to account for any mental limitations in the RFC regarding the Plaintiff's mild mental limitations and by failing to expressly explain why such limitations were not included in the RFC?

2) Whether the Commissioner erred as a matter of law by failing to properly consider all of the Plaintiff's symptoms, including her episodes of vomiting when determining her RFC?

3) Whether the Commissioner erred as a matter of law by failing to properly evaluate the medical necessity of the Plaintiff's cane?

Filing No. 22-1 at 6.

## BACKGROUND

Plaintiff was born in 1972 and attended some college. Tr. at 52, 78; Filing No. 7-2 at 53; Filing No. 7-3 at 8. She has prior history of working as a server, bartender, and in her glass shop. Tr. at 54; Filing No. 7-2 at 55. The vocational examiner, Stephen Schill, testified Plaintiff's past work as a server would constitute semiskilled light work. Tr. at 67; Filing No. 7-2 at 68.

### I.    Mental Limitations

Plaintiff alleges she is disabled, in part, due to recurrent major depressive disorder. *See* Tr. 373; Filing No. 7-6 at 101. She completed a function report on September 30, 2022. Tr. 299; Filing No. 7-6 at 27. In this report, Plaintiff noted she needs no reminders to take care of personal needs, grooming, or to take medicine. She uses her calendar to remind her of doctors' appointments. She prepares her own meals daily. She notes she can shop in stores monthly for three to four hours at a time and, further, is able to handle her own money, including paying bills. She has no problem getting along with family, friends, neighbors, or others. She notes no issues with memory, completing tasks, understanding, following instructions, or getting along with others. She does note her conditions affect concentration. She notes she follows written and spoken instructions "pretty well," and gets along with authority figures "fine."

The record also includes surveys Plaintiff completed while attending physical therapy for her low back and neck. These surveys asked Plaintiff how often she felt downhearted and blue: all of the time, most of the time, a good bit of the time, some of the time, a little of the time, or none of the time. From December 2022 to March 2023, Plaintiff normally checked that she felt downhearted and blue "some of the time." Tr. 1008; Filing No. 9-1 at 96 (12/23/22); Tr. 990; Filing No. 9-1 at 78 (01/11/23); Tr. 973; Filing No. 9-1 at 61 (02/03/23); Tr. 942; Filing No. 9-1 at 30 (03/09/2023). She occasionally checked that she felt downhearted and blue "a good bit of the time," Tr. 1024; Filing No. 9-1 at 112

(12/8/22); Tr. 958; Filing No. 9-1 at 46 (02/17/23), and once checked that she only felt downhearted and blue "a little of the time." Tr. 924; Filing No. 9-1 at 12 (03/24/23). Notably, this question was asked in conjunction with other questions about the impact of pain on Plaintiff's life.

In April 2023, Plaintiff established care with Kelly Hoover, PA-C at Omaha Insomnia & Psychiatric Services. During this initial appointment, Plaintiff reported difficulty falling and staying asleep. She also reported feeling depressed or irritable, experiencing the loss of pleasure or interest, decreased appetite, feeling fatigued, and feelings of worthlessness, guilt, or hopelessness. Her mood was euthymic. Her attention and concentration was intact. PA-C Hoover noted her diagnoses were major depressive disorder, recurrent, moderate and primary insomnia. PA-C Hoover prescribed Plaintiff Belsomra. Tr. 1118; Filing No. 9-1 at 206.

Plaintiff continued treating with PA-C Hoover for psychotherapy and medication management. Plaintiff's attorney asserted during the hearing with the ALJ that Plaintiff primarily treats with this provider for insomnia as opposed to depression. Tr. 50; Filing No. 7-2 at 51. Plaintiff similarly testified that, "My insomnia doctor . . . also helps with my depression and we're trying to manage something that will help me sleep hopefully five hours in a row." Tr. 65; Filing No. 7-2 at 66.

In July 2023, Plaintiff reported to PA-C Hoover that the Belsomra initially helped but stopped working. Her mood during this appointment was depressed and anxious. PA-C Hoover started Plaintiff on Remeron. Tr. 1115, Filing No. 9-1 at 204. In August 2023, Plaintiff's mood was still depressed and anxious and she reported Remeron was not working. PA-C Hoover switched Plaintiff to Ambien (10 mg). Tr. 1112, Filing No. 9-1 at 200.

When Plaintiff returned on November 2, 2023, her mood was euthymic instead of depressed and anxious, but she reported she was struggling with sleep. PA-C Hoover added Seroquel in addition to the Ambien. Tr. 1110; Filing No. 9-1 at 198. On November 30, 2023, Plaintiff reported her cardiologist did not approve the Seroquel and she was still not sleeping. Her mood was still euthymic, not depressed and anxious. PA-C Hoover stopped the Ambien and switched her back to Belsomra. Tr. 1476; Filing No. 9-3 at 254.

4

On April 17, 2023 and November 9, 2023, the state agency psychological consultants found Plaintiff did not have any medically determinable mental impairment. Tr. 84; Filing No. 7-3 at 14; Tr. 94; Filing No. 7-3 at 24; Tr. 107; Filing No. 7-3 at 37; Tr. 119; Filing No. 7-3 at 49. During the hearing with the ALJ, Plaintiff testified about her physical limitations, but she did not testify about how depression limited her ability to work. *See* Tr. 52–65; Filing No. 7-2 at 53–66.

## II.    Nausea and Vomiting

Plaintiff's records indicate she has a "long-standing history of chronic constipation with associated nausea and vomiting." Tr. 1104; Filing No. 9-1 at 192. There are subjective reports in Plaintiff's medical records indicating she has experienced vomiting related to severe constipation for at least thirty years. Tr. 1157; Filing No. 9-2 at 17. She has been treating for this condition since 2013 at Midwest Gastrointestinal Associates ("MGI") with Dr. Matthew McMahon. Tr. 58; Filing No. 7-2 at 59.

Throughout her treatment with Dr. McMahon, Plaintiff underwent several diagnostic tests which were generally unremarkable. Tr. 414; Filing No. 8-1 at 28 (8/2/19) (gastric emptying study was normal but EGD showed retained food in stomach along with symptoms suggestive of gastroparesis); Tr. 435; Filing No. 8-1 at 49 (7/2/21) (detailing unremarkable 2019 CT, 2013 colonoscopy, and 2014 flexible sigmoidoscopy); First *see* Tr. 587; Filing No. 8-1 at 201 (2/28/22 colonoscopy); Tr. 589; Filing No. 8-1 at 203 (2/28/22 upper GI endoscopy); Tr. 591; Filing No. 8-1 at 205 (3/9/22 CT); and then *see* Tr. 593; Filing No. 8-1 at 207 (McMahon's interpretation of the 2022 test results); First *see* Tr. 1211; Filing No. 9-2 at 71 (12/22/23 flexible sigmoidoscopy); and then *see* Tr. 1208; Filing No. 9-2 at 68 (McMahon's interpretation of the test results).

It is Dr. McMahon's opinion that Plaintiff's constipation symptoms "are probably due to a combination of irritable bowel syndrome as well as pelvic floor dysfunction," Tr. 595; Filing No. 8-1 at 200, and that her "nausea [is] probably related to constipation." Tr. 1208; Filing No. 9-2 at 68.

Dr. McMahon has worked with Plaintiff to find the correct medication regime to treat her bowel conditions. Plaintiff appears to experience the most relief from her constipation symptoms with Linzess, often in conjunction with other laxatives like MiraLAX

5

or Trulance. *See* Tr. 593; Filing No. 8-1 at 207; Tr. 1208; Filing No. 9-2 at 68. She is prescribed Zofran for nausea, and it seems to provide some relief. In July 2021, Plaintiff reported to Amanda Millemon, PA-C during a consultative exam that, unless she takes her medications, she will vomit multiple times a day. Plaintiff's medications at this time included both Linzess and Zofran. Tr. 438; Filing No. 8-1 at 52. In August 2022, Plaintiff was unwilling to discontinue Zofran because it "provides significant symptom relief." Tr. 597; Filing No. 8-1 at 211. In October 2023, Dr. McMahon prescribed her Compazine to treat breakthrough nausea in conjunction with the Zofran. Tr. 1202; Filing No. 9-2 at 62. At her next appointment, Plaintiff reported her symptoms were "doing about the same" and she continues to experience "intermittent nausea and vomiting." Tr. 1208; Filing No. 9-2 at 68.

Dr. McMahon's treatment generally focuses on treating Plaintiff's chronic constipation. Dr. McMahon notes several times that, although Plaintiff "[o]ccasionally" experiences nausea, nausea "is not her primary complaint." Tr. 593; Filing No. 8-1 at 207 (4/19/22); Tr. 595; Filing No. 8-1 at 200 (5/26/22); Tr. 597; Filing No. 8-1 at 211 (8/18/22); Tr. 1099; Filing No. 9-1 at 187 (10/11/22). For instance, he notes in October 2023 that Plaintiff's "biggest ongoing issue has been constipation" and that she "also complains of some nausea when she is feeling particularly constipated." Tr. 1202; Filing No. 9-2 at 62; *see also* Tr. 1104; Filing No. 9-1 at 192 (Plaintiff reported for 7/7/23 MGI appointment she was currently experiencing "mild" nausea and vomiting). Plaintiff also denied experiencing nausea or vomiting on several occasions when speaking to other medical providers. Tr. 556; Filing No. 8-1 at 170 (12/26/18); Tr. 619; Filing No. 8-1 at 233 (10/4/22); Tr. 1128; Filing No. 9-1 at 216 (4/4/23); Tr. 1115; Filing No. 9-1 at 203 (7/26/23); Tr. 1112; Filing No. 9-1 at 200 (8/29/23); Tr. 1243; Filing No. 9-3 at 22 (9/20/23); Tr. 1110; Filing No. 9-1 at 198 (11/2/23).

In contrast, Plaintiff reported to PA-C Millemon during a second consultative exam in February 2022 that she wakes up "due to severe stomach problems including stomach cramping, vomiting, diarrhea and pain," "[s]pends most of her morning in the bathroom," and "violently vomits" daily. Tr. 458; Filing No. 8-1 at 72. Similarly, Plaintiff testified she has "a very hard time staying out of the bathroom" and that her medication causes her "massive intestinal spasms and cramping" so "[a] lot of times [she's] curled up on the

6

bathroom floor [bawling]" and that she has "constant nausea." Tr. 57; Filing No. 7-2 at 58. In describing her day, Plaintiff testified she is "throwing up almost as soon as [she] wake[s] up in the morning." Tr. 64; Filing No. 7-2 at 65; *see also* Tr. 299–300; Filing No. 7-6 at 27–28 (function report).

The ALJ did not include limitations related to Plaintiff's vomiting in the RFC. The ALJ explained she "did not account for [Plaintiff's] contention" that she spends hours toileting daily "because her statements are inconsistent with her ability to work with similar symptoms." Tr. 24; Filing No. 7-2 at 25. The ALJ found Plaintiff's statements inconsistent because Plaintiff often denies ongoing nausea and vomiting symptoms and was able to "manage her abdominal symptoms with no more than conservative care" while "working full time as a food server." Tr. 18; Filing No. 7-2 at 19.

### III.    Use of Cane

Plaintiff testified she uses a cane on her "bad days." Tr. 64; Filing No. 7-2 at 65. She testified she was prescribed a cane in 1998 after a car accident and her providers throughout the years told her to continue to use it if it helps. *Id.* In her function report, she indicated she uses her cane "on occasion," "usually [in the] winter." Tr. 305; Filing No. 7-6 at 33.

Plaintiff's cane use is not documented in the record. Rather, the medical record indicates Plaintiff does not use a cane to ambulate. PA-C Millemon reports based on her July 8, 2021 and February 17, 2022 consultative exams that Plaintiff's gait is normal and she ambulates without using any devices. Tr. 443; Filing No. 8-1 at 57; Tr. 464; Filing No. 8-1 at 78. Plaintiff's rheumatology treating provider, Linda Beisley-Lohr, APRN-NP, opined in February 2024 that Plaintiff does not require the use of a cane to ambulate. Tr. 1479; Filing No. 9-3 at 259. Nursing documentation from Plaintiff's primary physician from a November 2022 visit notes Plaintiff does not use an ambulatory aid. Tr. 827; Filing No. 8-1 at 441. Similarly, nursing documentation from a November 2023 cardiology appointment also notes Plaintiff does not use an ambulatory aid. Tr. 1344; Filing No. 9-3 at 123.

Additionally, Plaintiff's medical providers consistently report Plaintiff ambulates normally. The records from the medical provider Plaintiff sees for low back pain

consistently indicate her gait is normal.[1] Plaintiff's gastroenterologist—Dr. McMahon— consistently notes Plaintiff ambulates without difficulty.[2] Plaintiff's mental health provider—PA-C Hoover—consistently reports Plaintiff's gait and station are "steady."[3] Plaintiff attended physical therapy for pain in her neck and lower back. The physical therapy records do note limited trunk rotation in Plaintiff's gait while walking as well as excessive bilateral hip external rotation. Tr. 914; Filing No. 9-1 at 2; Tr. 977; Filing No. 9-1 at 65; Tr. 1002; Filing No. 9-1 at 90; Tr. 1033; Filing No. 9-1 at 121. However, Plaintiff also completed surveys during physical therapy and never checked the box indicating she "can walk only with crutches or a cane."[4] The ALJ did not include limitations related to Plaintiff's cane usage in the RFC.

## LEGAL STANDARD

The Court reviews a decision denying disability benefits by analyzing whether the ALJ's decision was "supported by substantial evidence in the record as a whole." *Mya Y. v. Saul*, No. 20-CV-1296, 2021 WL 3023691, at *2 (D. Minn. June 28, 2021), *R&R adopted by* 2021 WL 3022723 (D. Minn. July 16, 2021) (citing 42 U.S.C. § 405(g)) (collecting cases). Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (quoting *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)). The Court considers evidence that supports and evidence that detracts from the

---

[1] Tr. 759; Filing No. 8-1 at 373 (8/17/22); Tr. 765; Filing No. 8-1 at 379 (10/5/22); Tr. 773; Filing No. 8-1 at 387 (11/9/22); Tr. 778; Filing No. 8-1 at 393 (12/6/22); Tr. 784; Filing No. 8-1 at 398 (12/28/22); Tr. 1076; Filing No. 9-1 at 164 (2/21/23); Tr. 1082; Filing No. 9-1 at 170 (4/10/23); Tr. 1088; Filing No. 9-1 at 176 (6/27/23); Tr. 1459; Filing No. 9-3 at 238 (8/23/23); Tr. 1199; Filing No. 9-2 at 59 (10/25/23); Tr. 1471; Filing No. 9-3 at 250 (11/16/23).

[2] Tr. 1485; Filing No. 9-4 at 2 (12/19/17); Tr. 1488; Filing No. 9-4 at 5 (8/15/18); Tr. 1490; Filing No. 9-4 at 7 (10/16/18); Tr. 1497; Filing No. 9-4 at 14 (6/25/19); Tr. 414; Filing No. 8-1 at 28 (8/2/19); Tr. 418; Filing No. 8-1 at 32 (10/3/19); Tr. 422; Filing No. 8-1 at 36 (12/4/19); Tr. 436; Filing No. 8-1 at 50 (7/2/21); Tr. 582; Filing No. 8-1 at 197 (2/16/22); Tr. 594; Filing No. 8-1 at 208 (4/19/22); Tr. 596; Filing No. 8-1 at 210 (5/26/22); Tr. 598; Filing No. 8-1 at 212 (8/18/22); Tr. 1100; Filing No. 9-1 at 188 (10/11/22); Tr. 1102; Filing No. 9-1 at 190 (2/2/23); Tr. 1107; Filing No. 9-1 at 195 (7/7/23); Tr. 1158; Filing No. 9-2 at 18 (8/16/23); Tr. 1203; Filing No. 9-2 at 63 (10/31/23); Tr. 1209; Filing No. 9-2 at 69 (12/27/23).

[3] Tr. 1133; Filing No. 9-1 at 221 (4/4/23); Tr. 1116; Filing No. 9-1 at 204 (7/26/23); Tr. 1113; Filing No. 9-1 at 201 (8/29/23); Tr. 1475; Filing No. 9-3 at 254 (11/30/23).

[4] Tr. 1022; Filing No. 9-1 at 110 (12/8/22); Tr. 1006; Filing No. 9-1 at 94 (12/23/22); Tr. 988; Filing No. 9-1 at 79 (1/11/23); Tr. 971; Filing No. 9-1 at 59 (2/3/23); Tr. 956; Filing No. 9-1 at 44 (2/17/23); Tr. 940; Filing No. 9-1 at 28 (3/9/23); Tr. 922; Filing No. 9-1 at 10 (3/24/23).

ALJ's decision. *Mulhall v. Colvin*, No. 8:11-CV-441, 2013 WL 959003, at *2 (D. Neb. Mar. 12, 2013). The Court must affirm a denial of benefits if it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings." *Jones*, 619 F.3d at 968 (quoting citation omitted).

## ANALYSIS

Plaintiff alleges that, in determining the RFC, the ALJ (1) failed to account for any mental limitations regarding her mild mental limitations; (2) failed to account for her symptoms of nausea and vomiting; and (3) failed to properly evaluate the medical necessity of her cane. Plaintiff moves the Court to remand to the ALJ for further proceedings.

The claimant has the burden of establishing their RFC. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016). "A claimant's RFC is 'the most' that the claimant can do in a work setting despite [their] limitations." *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)). "The [ALJ] must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [their] limitations." *Id.*

### I.    Mild Mental Limitations

Plaintiff argues the ALJ erred because, at Step 2, the ALJ found Plaintiff had mild mental limitations stemming from depression but did not adopt an RFC including any mental limitations and did not explain why such limitations were not included. Plaintiff is not challenging the ALJ's Step 2 determination.

For context, at Step 2, when evaluating the severity of a claimant's mental impairments, the ALJ must first "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). The ALJ "then rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas (often referred to as the Paragraph B criteria). *Id.* The ALJ's ratings are on a five-point scale of none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520(c)(4). A rating of

"none" or "mild" will typically result in a conclusion by the ALJ that the mental impairment is non-severe. 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ found Plaintiff's mental impairment of depression non-severe and rated three of the Paragraph B categories as "mild" and one as "none." Tr. 14-15; Filing No. 7-2 at 15–16.

The analysis at Step 2 is legally distinct from the RFC determination. *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006). Accordingly, a Step 2 finding the claimant has a mild mental limitation does not necessarily require the ALJ to include this limitation in the RFC determination. *Rebecca E. W. v. O'Malley*, No. 22-CV-1028, 2024 WL 964443, at *2 (N.D. Iowa Mar. 6, 2024), *R&R adopted by* 2024 WL 1283818 (N.D. Iowa Mar. 26, 2024); *see also Lacroix*, 465 F.3d at 888 n.3 (ALJ did not err in excluding claimant's mental impairments from RFC despite finding these impairments severe at Step 2).

The question is whether the ALJ appropriately considered a claimant's mild mental limitations in combination with the claimant's other impairments to determine the RFC. *See Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008) (ALJ considers combined effects of severe and non-severe impairments to determine the RFC). SSR 96-8p[5] requires the ALJ to perform an itemized functional assessment "more detailed" than the Step 2 analysis when determining a mental RFC but the ALJ is not necessarily required to explain this assessment in detail in their opinion. *Joseph v. Colvin*, No. 8:12-CV-146, 2013 WL 1788570, at *20 (D. Neb. Apr. 26, 2013) ("[T]here is a difference between what the ALJ must consider and what the ALJ must explain."). The Court must still be able to determine from the ALJ's opinion the reason the ALJ excluded mental limitations the ALJ found at Step 2 from the RFC. *Mark E. v. Kijakazi*, No. 20-CV-2047, 2021 WL 6066260, at *10 (D. Minn. Dec. 7, 2021), *R&R adopted by* 2021 WL 6063631 (D. Minn. Dec. 22, 2021). "If the ALJ determines that a non-severe impairment does not affect a claimant's ability to work, the ALJ does not need to include the impairment in the RFC, or in the hypothetical question to the VE." *Pulido v. Kijakazi*, No. 4:20-CV-00964, 2021 WL

---

[5] SSR 96-8p, 1996 WL 374184, at *4 ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

5236495, at *2 (W.D. Mo. Nov. 10, 2021) (citing *Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir. 2004)).

Here, contrary to Plaintiff's assertions, the Court is able to determine from the opinion why the ALJ did not include Plaintiff's mild mental limitations in the RFC. The ALJ discussed medical evidence pertaining to Plaintiff's mental limitations at Step 2. In determining the RFC, the ALJ noted that Plaintiff "denied any mental function limitations and demonstrated normal cognition, memory and attention and concentration on exams." Tr. 20; Filing No. 7-2 at 21. The ALJ also discussed that, although Plaintiff reported poor concentration, she reported "she can shop monthly for three to four hours at [a] time, can manage money, takes her medications without reminders, can follow instruction, and gets along well with others" and that Plaintiff "indicated no difficulty managing money despite reporting significant brain fog[.]" Tr. 20–21; Filing No. 7-2 at 21–22. Moreover, the ALJ noted that Plaintiff "provided no testimony suggesting she has significant or ongoing depression or anxiety." Tr. 18; Filing No. 7-2 at 19. Finally, the ALJ considered that the state agency psychology consultants determined Plaintiff does not suffer from any medically determinable mental impairment. Tr. 25; Filing No. 7-2 at 26. The ALJ provided a sufficient basis to understand why Plaintiff's mild mental limitations were not included in her RFC.

Moreover, substantial evidence of record supports the ALJ's determination. For instance, Plaintiff's mood improved from depressed and anxious to euthymic over the course of several months while she was taking Ambien. Plaintiff also normally only reported feeling "downhearted and blue" "some of the time." Finally, Plaintiff did not testify about how her depression affects her ability to work. The ALJ did not err in omitting Plaintiff's mild mental limitations from the RFC.

## II.    Nausea and Vomiting

Next, Plaintiff argues the ALJ erred by failing to include a limitation in her RFC to accommodate her vomiting episodes. She argues the ALJ improperly discredited her statements that she spends hours a day vomiting based on records indicating she has few ongoing complaints for constipation or vomiting. She argues her condition waxes and wanes and that these records merely indicate temporary short-term improvement.

An ALJ may appropriately discount a claimant's statements about how a condition affects their ability to work when the claimant's symptoms do not worsen after the claimant previously worked with the impairment. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("The fact that [claimant] worked with the impairments for over three years after her strokes, coupled with the absence of evidence of significant deterioration in her condition, demonstrate the impairments are not disabling in the present."). An impairment is not disabling if it "can be controlled by treatment or medication." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).

It is undisputed Plaintiff experiences some nausea and vomiting secondary to constipation. However, Plaintiff's condition is not new. She reported experiencing "intermittent vomiting for at least 30 years," Tr. 1157; Filing No. 9-2 at 17, and she has been treating with Dr. McMahon for this condition since 2013—approximately five years prior to her alleged onset date of September 1, 2018. Tr. 57–58; Filing No. 7-2 at 58–59. During this time period, Plaintiff was able to work as a server. The medical record does not support Plaintiff's contention that she is now unable to work because she spends hours vomiting daily.

Rather, the record indicates Plaintiff's nausea and vomiting is relatively stable and well controlled with medications. For instance, Plaintiff herself reports that she only experiences vomiting multiple times daily "if she doesn't take [her] medications." Tr. 438; Filing No. 8-1 at 52. The doctor responsible for treating this condition, Dr. McMahon, repeatedly notes nausea is not Plaintiff's "primary complaint."

Additionally, the ALJ did not improperly rely on records showing improvement when Plaintiff's condition actually waxes and wanes. Even when Plaintiff's symptoms do occasionally worsen, the record still does not support finding her symptoms rise to the level of severity she reports experiencing. For example, Dr. McMahon notes in February 2022 Plaintiff was experiencing "<u>some</u> worsening nausea and vomiting." Tr. 582; Filing No. 8-1 at 196 (emphasis added). Similarly, in October 2023, Dr. McMahon notes Plaintiff requested additional medication to use in conjunction with her normal nausea medication because she was experiencing "some nausea" while "particularly constipated." Tr. 1202; Filing No. 9-2 at 62. In February 2023, Plaintiff attended physical therapy for her back

while feeling nauseous and was able to perform the exercises more slowly to avoid vomiting. Tr. 966; Filing No. 9-1 at 54. "Some" worsened nausea does not align with Plaintiff's complaints that she vomits multiple times a day. The ALJ did not err in excluding limitations pertaining to Plaintiff's vomiting from the RFC.

### III.    Medical Necessity of Cane

Plaintiff argues the ALJ erred by failing to properly evaluate the medical necessity of Plaintiff's cane when determining her RFC. Specifically, Plaintiff argues the ALJ improperly relied on her treating rheumatology provider's opinion that she does not need a cane to exclude cane limitations from her RFC when the ALJ ultimately did not find this provider's overall opinion persuasive. Plaintiff also argues the ALJ impliedly accepted Plaintiff needs a cane in the winter and erred in not considering her need for a cane when determining her RFC.

SSR 96-9P discusses the procedure for determining an individual's RFC. 1996 WL 374185. SSR 96-9P specifically states that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." 1996 WL 374185, at *7.

The Eighth Circuit "has not addressed what specific documentation a claimant must provide to establish the limitations of a medically required hand-held assistive device." *Mya Y.*, No. 20-cv-1296, 2021 WL 3023691, at *5 (collecting cases). As such, other district courts in this circuit have cited decisions from the Third, Seventh, and Tenth Circuits that require "an unambiguous opinion from a physician stating the circumstance in which the assistive device is medically necessary." *Id.* (collecting cases). Applying this logic, Plaintiff "must show the cane is medically required by offering medical documentation that (1) demonstrates the cane is necessary to help her walk or stand and (2) describes the circumstances in which the device is needed." *Id.* (quoting *Patricia M. v. Saul*, No. 18-cv-3462, 2020 WL 3633218, at *7 (D. Minn. Feb. 5, 2020)).

The ALJ properly evaluated the medical necessity of Plaintiff's cane. The ALJ found there is not "any provider observation [Plaintiff] is using or needs to be using a cane

13

during the relevant period." Tr. 19; Filing No. 7-2 at 20. Plaintiff does not dispute this finding or point the Court to any medical records indicating Plaintiff needs a cane. The undersigned reviewed the entire medical record and cannot locate any medical documentation indicating Plaintiff needs a cane. In fact, as set forth in detail above, the medical documentation indicates the opposite. *See, e.g.*, Tr. 443; Filing No. 8-1 at 57; Tr. 464; Filing No. 8-1 at 78; Tr. 1479; Filing No. 9-3 at 259; Tr. 827; Filing No. 8-1 at 441; Tr. 1344; Filing No. 9-3 at 123. The only evidence that Plaintiff needs a cane is her own testimony or statements. Even these merely indicate she uses a cane "on [her] bad days" and that she uses her cane "on occasion"—"usually [in the] winter." Tr. 64; Filing No. 7-2 at 65; Tr. 305; Filing No. 7-6 at 33. Plaintiff's own statements are not enough to meet the medical documentation required. *Edwards v. Berryhill*, No. 5:17-CV-5092, 2019 WL 1320314, at *15 (D.S.D. Mar. 22, 2019).

Contrary to Plaintiff's assertion, the ALJ did not impliedly find it credible that Plaintiff needs a cane in winter. The ALJ expressly states she "did not account for the claimant's contention she . . . needs to walk with a cane on 'bad days' (or in the winter)" in the RFC "because her statements are inconsistent with her ability to work with similar symptoms since 2017 without worsening symptoms persisting for 12 consecutive months since her alleged onset date" as well as inconsistent with the medical record. Tr. 24; Filing No. 7-2 at 25. Similarly, the ALJ did not improperly rely on Plaintiff's treating rheumatology provider's opinion to arrive at her conclusion. Rather, the opinion shows the ALJ considered this opinion in conjunction with the medical record (and lack of medical documentation pertaining to the cane), the credibility of Plaintiff's statements, and other medical opinions. The ALJ properly evaluated the medical necessity of Plaintiff's cane when determining the RFC.

Moreover, substantial evidence supports the ALJ's decision. Four different medical providers note Plaintiff does not use an ambulatory device. *See* Tr. 443; Filing No. 8-1 at 57; Tr. 464; Filing No. 8-1 at 78 (PA-C Millemon); Tr. 1479; Filing No. 9-3 at 259 (APRN-NP Beisley-Lohr); Tr. 827; Filing No. 8-1 at 441 (nursing documentation from Plaintiff's primary); Tr. 1344; Filing No. 9-3 at 123 (cardiology nursing documentation). In records spanning six years starting in 2017 (prior to the alleged onset date), Plaintiff's providers consistently note she ambulates normally. This includes the records dated during the

14

winter. *See supra* notes 1–4 and accompanying text. There is no medical evidence explaining why Plaintiff may need a cane and in what circumstances. *See Daniel H. v. Commissioner*, No. 24-cv-3047, 2026 WL 711291, at *6 (N.D. Iowa Mar. 13, 2026), *R&R adopted by* 2026 WL 916622 (N.D. Iowa Mar. 31, 2026) (the ALJ did not err in finding an individual's cane use was not medically necessary in determining the RFC when individual lacked a prescription for a cane, even when individual had an antalgic gait). The ALJ did not err in excluding limitations pertaining to Plaintiff's cane use from the RFC.

## CONCLUSION

IT IS HEREBY RECOMMENDED to the Honorable Robert F. Rossiter, Jr., Chief United States District Judge that Plaintiff's Motion to Reverse and Remand, Filing No. 22, be denied. It is further recommended that the Motion to Affirm the Commissioner's Decision, Filing No. 24, be granted and the Commissioner's decision to deny benefits be affirmed.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this Court may be held to be a waiver of any right to appeal the Court's adoption of the recommendation.

Dated this 8th day of May, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge

15